IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELIJAH M. SMITH,<br>    **Plaintiff** | : | |
| | : | No. 1:21-cv-00915 |
| v. | : | |
| | : | (Judge Kane) |
| DAVID J. EBBERT, et al.,<br>    **Defendants** | : | |

## MEMORANDUM

On November 13, 2020, pro se Plaintiff Elijah M. Smith ("Plaintiff"), who is presently incarcerated at the United States Penitentiary McCreary in Pine Knot, Kentucky ("USP McCreary"), initiated the above-captioned action by filing a complaint pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), against Defendants Warden David J. Ebbert ("Ebbert") and Assistant Warden Colbert ("Colbert") in the United States District Court for the Western District of Pennsylvania. (Doc. No. 9.) Plaintiff also filed a motion for leave to proceed in forma pauperis (Doc. No. 1) and a motion to appoint counsel (Doc. No. 10). In an Order dated November 23, 2020, that court denied Plaintiff's motion for leave to proceed in forma pauperis because Plaintiff had failed to submit a certified copy of his prison trust fund account statement. (Doc. No. 2.)

On April 27, 2021, Plaintiff filed a second motion for leave to proceed in forma pauperis (Doc. No. 3) and a certified copy of his prisoner trust fund account statement (Doc. No. 4). In an Order dated May 18, 2021, the Western District of Pennsylvania transferred the above-captioned action to this Court because Plaintiff's complaint concerns events that allegedly occurred while he was incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania ("USP Lewisburg"). (Doc. No. 7.) Plaintiff subsequently paid the full filing fee on June 21, 2021.

(Doc. No. 12.) Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"),[1] the Court will perform its mandatory screening of Plaintiff's complaint. For the reasons set forth below, the Court will dismiss Plaintiff's complaint, deny his motion to appoint counsel, and deny as moot his motion for leave to proceed in forma pauperis.

I.  **BACKGROUND**

In his complaint, Plaintiff alleges that he arrived at USP Lewisburg on October 9, 2018 and was incarcerated there for eleven (11) months. (Doc. No. 9 at 8.) He avers that during his incarceration there, he "made several attempts to obtain legal documents and other supporting evidence from [his] personal property." (Id.) Between November and December of 2018, Plaintiff submitted three (3) requests to staff requesting permission to retrieve legal documents so that he could "present evidence to the Federal Medical Center, and also prepare to compose a rebuttal for a petition submitted to the United States District [Court] for the Eastern District of California." (Id.) Plaintiff's requests were denied, and he "sought to exhaust administrative remedies." (Id.)

Plaintiff maintains further that after talking to Defendant Colbert, he was told that inmates don't receive their property until their sixth month of programming at USP Lewisburg, but that his property had arrived there. (Id. at 9.) Defendant Colbert subsequently told Plaintiff that property was issued in order of arrival. (Id.) Plaintiff avers that even though he satisfied the instructions Defendant Colbert gave him about retrieving his property, Defendant Colbert still denied him access. (Id.) Plaintiff claims that Defendant Ebbert failed to prevent the violation of his rights and could have "easily located and tracked the Plaintiff's personal property." (Id. at

---

[1] See The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

10.) He avers that Defendant Ebbert only depended on the "informal resolution's response, even after the Plaintiff verified proof for needed legal documents." (Id.) Plaintiff suggests that Defendant Ebbert failed to "overrule faulty regulations [and] allowed violations to occur." (Id.) Based on the foregoing, the Court construes Plaintiff's complaint as alleging violations of his First Amendment right to access the courts.[2] Plaintiff also suggests that Defendants violated Bureau of Prisons ("BOP")' policies. As relief, Plaintiff seeks $50,000.00 from each Defendant as well as "the revision of tort claim #TRT-MXR-2018-06796." (Id. at 7.)

## II. LEGAL STANDARD

### A. Screening and Dismissal of Prisoner Complaints

Although Plaintiff paid the filing fee in full, the Court has the authority to screen his complaint pursuant to 28 U.S.C. § 1915A. See Shane v. Fauver, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner complaint pursuant to § 1915A(b)(1) even if the prisoner is not proceeding in forma pauperis). Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." See 28 U.S.C. § 1915A(a). If a complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," the Court must dismiss the complaint. See 28 U.S.C. § 1915A(b)(1). A complaint is frivolous if it lacks an arguable basis either in law or fact. See

---

[2] In his complaint, Plaintiff suggests that Defendants violated his Fourteenth Amendment rights by denying him "equal protection of the laws where citizens of the United States have the right to litigate to any courts of this country." (Doc. No. 9 at 12.) Because the First Amendment covers Plaintiff's claim, the "more-specific-provision" rule requires dismissal of his Fourteenth Amendment claim. See Albright v. Oliver, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular source of government behavior, that Amendment, not the more generalized notion of substantive due process[,] must be the guide for analyzing the claims.").

3

Mitchell v. Horn, 381 F.3d 523, 530 (3d Cir. 2003) (citing Neitzke v. Williams, 490 U.S. 319, 327-28 (1989)).  When deciding whether a complaint fails to state a claim on which relief may be granted, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See, e.g., Smithson v. Koons, No. 15-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c)(1) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."); Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)").

To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).  When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff.  See id. at 679; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

Based on this standard, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a Rule 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). In addition, in the specific context of pro se prisoner litigation, a district court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106).

### B. Bivens Action

A Bivens civil rights action asserted under § 1331 is evaluated using the same standards applicable to a § 1983 civil rights action. See Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir. 1975); Veteto v. Miller, 829 F. Supp. 1486, 1492 (M.D. Pa. 1992). To state a claim under Bivens, a plaintiff must allege that he was deprived of a federal right by a person acting under color of federal law. See Young v. Keohane, 809 F. Supp. 1185, 1199 (M.D. Pa. 1992).

## III. DISCUSSION

### A. Plaintiff's Complaint

It is well-settled that "prisoners have a constitutional right of access to the courts." See Bounds v. Smith, 430 U.S. 817, 821 (1977). "In order to state a claim of the denial of access to the courts, a prisoner such as [Plaintiff] must allege that his efforts to pursue a legal claim were

hindered and he suffered an actual injury." Ross v. Clerk of Courts of Court of Common Pleas of Phila., 726 F. App'x 864, 865 (3d Cir. 2018) (citing Lewis v. Casey, 518 U.S. 343, 351 (1996)). "[P]risoners may only proceed on access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement." Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008). A complaint raising an access to the courts claim "must describe the underlying claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" See Christopher v. Harbury, 536 U.S. 403, 416-18 (2002).

Plaintiff's complaint, as pled, fails to set forth a plausible access to the courts claim. Plaintiff alleges that he required access to his legal property so that he could "present evidence to the Federal Medical Center, and also prepare to compose a rebuttal for a petition submitted to the United States District [Court] for the Eastern District of California." (Doc. No. 9 at 8.) Plaintiff, however, "fails to describe the underlying claims in these documents in any detail, let alone enough to allege that he suffered an actual injury" through an inability to access his legal property. See Islaam v. Kubicki, 838 F. App'x 657, 659 (3d Cir. 2020). Thus, Plaintiff's access to the courts claim is subject to dismissal.

In any event, the Court notes further that there is no Bivens remedy available for Plaintiff's claims. In 1971, the Supreme Court concluded that, even absent statutory authorization, it would enforce a damages remedy allowing individuals to be compensated after experiencing violations of the prohibition against unreasonable searches and seizures contained in the Fourth Amendment. See Bivens, 403 U.S. at 397. Subsequently, the Court extended the Bivens cause of action in two cases involving constitutional violations. First, in Davis v. Passman, 442 U.S. 228, 249-49 (1979), the Court concluded that the Fifth Amendment's Due Process Clause provided a damages remedy to an administrative assistant claiming that a

6

Congressman had discriminated against her on the basis of gender. Next, the Court concluded that the Eighth Amendment's prohibition on cruel and unusual punishment provided a prisoner a cause of action for damages against prison officials who failed to treat his asthma. See Carlson v. Green, 446 U.S. 14, 19 (1980). "These three cases—Bivens, Davis, and Carlson—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." See Ziglar v. Abbasi, 137 S. Ct. 1843, 1855 (2017). Over the years that followed, the Supreme Court has "consistently refused to expand Bivens actions beyond these three specific contexts." See Mack v. Yost, 968 F.3d 311, 318 (3d Cir. 2020).

In Ziglar, the Supreme Court noted that "expanding the Bivens remedy is now a 'disfavored' judicial activity." See Ziglar, 137 S. Ct. at 1857. As the Court stated in Ziglar:

> If the case is different in a meaningful way from previous Bivens cases decided by this Court, then the context is new. Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

See id. at 1859-60. If the case presents a new context, a court must then consider whether any alternative remedies exist. See id. Even absent alternative remedies, a court must also consider whether special factors counsel against extending the Bivens remedy. See id.

The Supreme Court has "never [explicitly] held that Bivens extends to First Amendment claims." See Reichle v. Howards, 566 U.S. 658, 663 n.4 (2012). This Court has previously concluded that First Amendment access to the courts claims "involve different constitutional rights than have been recognized in previous Bivens cases [and therefore] are meaningfully

7

different and present a 'new context.'" See Simmons v. Maiorana, No. 3:16-cv-1083, 2019 WL 4410280, at *13 (M.D. Pa. Aug. 23, 2019), report and recommendation adopted, 2019 WL 4412296 (M.D. Pa. Sept. 13, 2019); see also Bush v. Griffin, No. 1:19-cv-1521, 2020 WL 5801408, at * n.3 (M.D. Pa. Sept. 29, 2020). Likewise, other courts have concluded that Bivens may not be extended to First Amendment access to the courts claims. See, e.g., Schwarz v. Meinberg, 761 F. App'x 732, 733-34 (9th Cir. 2019); Vega v. United States, 881 F.3d 1146, 1152-53 (9th Cir. 2018); Tate v. Harmon, No. 7:19-cv-609, 2020 WL 7212578, at *5 (W.D. Va. Dec. 7, 2020); Lee v. Matevousian, No. 1:18-cv-169-GSA-PC, 2018 WL 5603593, at *3-4 (E.D. Cal. Oct. 26, 2018); Williams v. Lynch, No. 1:16-cv-3043-DCC, 2018 WL 4140667, at *4 (D.S.C. Aug. 30, 2018). In light of this precedent, Plaintiff's access to the courts claim presents a new Bivens context.

Because Plaintiff's claim presents a new context, the Court must determine whether there are any special factors that counsel hesitation in extending Bivens. See Mack, 968 F.3d at 317. There may be many special factors, but two are "'particularly weighty': the availability of an alternative remedial structure and separation-of-powers concerns." See id. at 320 (quoting Bistrian v. Levi, 912 F.3d 79, 90 (3d Cir. 2018)). The Court agrees with other courts that have concluded that federal inmates have alternative remedies for the access to the courts claims in the form of the BOP's administrative remedies program, through the Federal Tort Claims Act ("FTCA"), or by seeking injunctive relief. See, e.g., Schwarz, 761 F. App'x at 734-35; Vega, 881 F.3d at 1154-55; Tate, 2020 WL 7212578, at *6; Lee, 2018 WL 5603593, at *4; Williams, 2018 WL 4140667, at *4. In his complaint, Plaintiff suggests that he was unsuccessful in seeking an administrative remedy; however, even if such remedies were unsuccessful, it does not mean that an alternative remedy was unavailable to Plaintiff. See Corr. Servs. Corp. v. Malesko,

8

534 U.S. 61, 69 (2001) ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability."). Likewise, extending Bivens to Plaintiff's claim "would substantially affect government operations and unduly burden BOP officials who must defendant against this suit in their personal capacities." See Schwarz, 761 F. App'x at 735. Moreover, "Congress's inaction and failure to provide a damages remedy, particularly where it has acted to enact sweeping reforms of prisoner litigation, suggest that an extension of a damages remedy for other types of mistreatment should not be judicially created." See Tate, 2020 WL 7212578, at *6. Courts have "afforded a level of deference to the decision making of prison officials," recognizing that "day-to-date administrative decisions have been committed solely to the province of the BOP." See Mack, 968 F.3d at 323; see also Railey v. Ebbert, 407 F. Supp. 3d 510, 523 (M.D. Pa. 2019) (noting that "the judicial restraint exercised in cases implicating the administration of prisons is another actor weighing against extension of the Bivens remedy").

In sum, the Court finds that Plaintiff's First Amendment access to the courts claim presents a new context to which Bivens has not previously been extended. Moreover, special factors counsel against extending Bivens to that new context. The Court, therefore, declines to extend Bivens to Plaintiff's access to the courts claim, and his claim will be dismissed.[3]

---

[3] Plaintiff also seeks relief for Defendants' purported violations of BOP policy. However, "Congress has not established a statutory damages remedy specific to violations of BOP policies." See Islaam, 838 F. App'x at 661. "To allow a damages remedy for violations of BOP policy that do not amount to unconstitutional conduct would exceed the bounds of judicial function." See id. (citing Mack, 968 F.3d at 317). Plaintiff's claims based upon violations of BOP policy are, therefore, also subject to dismissal.

B.     Leave to Amend

Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  See Foman v. Davis, 371 U.S. 178, 182 (1962).  The Court may deny a motion to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment."  See id.  The Court must also determine whether a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim upon which relief may be granted.  See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002).  Based upon the foregoing discussion, the Court concludes that it would be futile to permit Plaintiff to file an amended complaint in this matter.

IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss Plaintiff's complaint (Doc. No. 9) for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1).  Plaintiff will not be granted leave to file an amended complaint.  Plaintiff's motion for leave to proceed in forma pauperis (Doc. No. 3) will be denied as moot, and his motion to appoint counsel (Doc. No. 10) will be denied.  An appropriate Order follows.